UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Cr.# 10-CR-10096-GAO |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| HONG WEI | ) |
| Defendant. | ) |
| _____ | ) |

**SENTENCING MEMORANDUM OF DEFENDANT PURSUANT
TO F.R.Cr.P. RULE 32(d) and 18 U.S.C. § 3553(a)**

"Those whom we would banish from society or from the human
community itself often speak in too faint a voice to be
heard above society's demand for punishment. It is the
particular role of courts to hear these voices, for the
Constitution declares that the majoritarian chorus may not
alone dictate the conditions of social life." <u>McCleskey v.
Kemp</u>, 481 U.S. 279 (1987) (Brennan, J. dissenting).

Ms. HONG WEI respectfully submits to this Honorable Court

the following memorandum to assist the Court in reaching an

appropriate sentence under all the provisions of 18 U.S.C. §

3553(a), inclusive of any consideration of the advisory United

States Sentencing Guidelines:

The government and Ms. Hong Wei have entered into a

F.R.Cr.P. Rule 11(c)(1)(B) plea agreement that allows the

government to argue for a sentence of 87 months and Ms. WEI to

argue for a sentence of 60 months.  The agreement contemplates

that Ms. Hong Wei will request a *non-guideline sentence of sixty

months* based on factors that, in accordance with 18 U.S.C. §

3553(a), is in variance with the United States Sentencing Guidelines calculated by the parties and Probation.  See Plea Agreement, page 6, paragraph 4.    This memorandum is written in support of a *sixty month sentence* for Ms. Hong Wei.  Said requested sentence will carry out all the sentencing goals of 3553(a), inclusive of punishment, deterrence and protection of society.

Ms. Wei's requested sentence is a small variance from the suggested advisory Guideline range of seventy months to eighty-seven months.  The advisory range is based on a Total Offense Guideline Offense Level of 27, Criminal History Category I, with application of the Acceptance of Responsibility. PSR ¶¶'s 100, 101, 106, 107.

## The Relevant Facts And Offense Conduct.

At the time of Ms. Wei's Rule 11 hearing the facts presented, filed with the Court and admitted to by Ms. Hong Wei were the following[1]:

"From 2004 until her indictment in March 2010, WEI and several co-defendants operated at least twenty brothels in Massachusetts.  At the time of her arrest, WEI was operating at least five brothels in Massachusetts (Allston, Quincy, Woburn, Stoneham and Wellesley).

---

[1] This recitation of facts along with other materials was provided to Probation shortly after the government provided Probation a statement of facts.

With respect to the conspiracy charge in Count One, WEI and her co-defendants placed advertisements in Chinese newspapers in New York, Massachusetts, and California for Asian women seeking employment in the "massage" business.  The women communicated by phone with WEI, who invited them to work for her.  The women who responded to these ads traveled to Massachusetts and were brought by WEI and her co-defendants to brothels where some were harbored and engaged in prostitution.  These women were thereafter transported to and from other brothels or to local airports or bus stations to return home.

WEI was the "boss" and controlled the organization. WEI answered the brothel telephones and directed male customers to the brothels.  WEI then would call the women on their personal cell phones at the brothel and advise them that a customer was coming.  WEI changed the women who worked in her brothels on the 3rd, 13th, and 23rd of each month.  WEI used "a driver" to pick up the money earned at each of the brothels.  The driver would deposit the illegal proceeds into WEI's bank accounts.

With respect to the forced labor charges in Counts Four and Five, and the harboring an alien charges in Counts Six and Seven, on August 11, 2005, the Peabody Police Department arrested an Asian female (hereinafter referred to as SO) for Maintaining a House of Prostitution and another Asian female (hereinafter referred to as NH) for Sexual Conduct for a Fee at 11 Essex Lane,

Peabody, Massachusetts.  In fact, WEI leased this apartment and operated the brothel located there.

SO was enticed to travel from California to Massachusetts by an employment agency in California, which offered her a job as a housekeeper in Massachusetts where she would earn $1,500 a month. SO flew to Boston and, upon her arrival at Boston Logan Airport, she was met by WEI and her co-defendant Jing Liang Chen.  SO spoke no English, had never been to Massachusetts, and had no friends or family in the area.  SO was also not in this country legally .  SO was driven to an apartment at 11 Essex Lane in Peabody and told that she would be responsible for the cooking and cleaning for the women at the brothels.  SO did not want to remain in the apartment because it was a brothel. Sometime during the one week period of time SO was in the apartment,  WEI told SO that she had to keep working at the brothel until she was replaced by another housekeeper.  WEI intimidated SO and called her stupid.   WEI's actions caused SO to be afraid of leaving the apartment and also in fear that the police would arrest her if she did.

NH, who was also arrested in that apartment on the same day, traveled to Boston after having an argument with her boyfriend. Once at South Station, and having no place to stay, she was referred by a stranger to WEI.  Within ten minutes of placing a call to WEI, WEI and co-defendant Jiang Ling Chen picked up NH.

4

WEI offered NH a place to stay for $25 a day and when NH agreed, she was transported to 11 Essex Lane in Peabody.  There were one or two other Asian females in the apartment, including SO, who did the cooking and cleaning.  On her second day in the apartment, NH told WEI that she wanted to leave.  WEI told NH that she could pay the rent by engaging in prostitution.  When NH demanded to leave, WEI became angry at her and told her that she had to stay until another girl was found to replace her.  NH was intimidated by WEI and Chen and felt that she had to stay at the brothel. NH speaks no English, had no family or friends in the area and was not in the United States legally.

On several occasions, WEI instructed her co-defendants Don Kai Chen and Yu En Jin to pick up Asian females at South Station Bus Station from out-of-state and to drive them to the various brothels where the men would help them load and unload their luggage.  WEI also instructed drivers, including Yu En Jin, to pick up and drop off various women from the brothels, taking them to other brothels or to the bus station or airport.  WEI directed her drivers, including Yu En Jin, to bring supplies to the brothels, including food, medicine, condoms, lubricants and towels.

The investigation revealed that during the period of January 2009 through August 2009, both WEI and co-defendant Xiang Hua ZHANG ("ZHANG") each maintained a checking account at Bank of

America.   The records of those accounts showed that for this time period cash deposits to WEI's accounts totaled approximately $92,000 while deposits to ZHANG's account totaled approximately $67,000.   The deposits were generally made once or twice a week at Massachusetts branches of Bank of America.   The majority of the cash deposited into ZHANG's account was used to pay expenses such as rent, utilities, and advertising for WEI's brothels."

In addition, Ms. Wei admitted that she advertised for woman outside of Massachusetts for jobs in the "massage" business and that she assisted some of those women in their travel to Massachusetts to engage in prostitution.

At no time did Ms. Wei plead to *human-trafficking* nor was she involved in human trafficking as presented by Probation in it's statement of facts at PSR ¶12, 15, and 23.   Neither has Ms. Wei plead to, nor did she cause any physical harm, as presented by Probation in ¶'s 24, 25.

This sentencing memorandum is written prior to Probation's final pre-sentence report presented to the Court and the prosecution's memorandum to the Court.   Therefore, Ms. Wei reserves her ability to present further submissions in response to Probation's final report and the prosecution's submission to the Court.

///

**18 U.S.C. § 3553 SENTENCING FACTORS**

1.  *The nature and circumstances of the offense*, 18 U.S.C. § 3553(a)(1).

There is little question that the instant charges are serious federal offenses that require a sentence that reflects both appropriate punishment tailored to the offense conduct, deterrence and protection to society.  Of note, is that the most serious of the charged conduct, forced labor, occurred almost eight years ago.

Ms. Wei's proposed sentence of 60 months (five years), imposes a significant punishment and deterrence upon her. The fact that her daughter Clara was born, immediately taken from her and placed into foster care while Ms. Wei was detained, as well as Ms. Wei's subsequent inability to provide nurturing maternal care for her daughter, is, in and of itself, an unbearable punishment for Ms. Wei's wrongful conduct.

1B.  *The history and characteristics of the defendant.*

Ms. Wei is a 41 year old immigrant from China where her family struggled financially to pay for her mother's medical condition.  PSR ¶ 112.  Ms. Wei's present criminal situation has caused her father and mother great stress and anguish.  <u>See</u>, PSR ¶ 116 and letters of parents/family attached as Exhibit A.  These letters were previously provided to Probation.

Ms. Wei immigrated to the United States in 1997 in the hopes of helping herself and her family attain a financially stable lifestyle.  To do so, Ms. Wei left her son Ning in the care and custody of her parents. See, PSR ¶121 and letter from Ning attached as Exhibit B.

Once in the "land of opportunity" Ms. Wei obtained jobs here and there.  She obtained employment in a spa, in a hair salon and also as a caretaker of children.  PSR ¶ 147.

Sometime in 1998, within a year of her arrival to the United States, her brother in China faced financial troubles.  Her brother's debt affected her entire family and she was called upon to help the family out.  PSR ¶ 63 and letter of Ping Wei, Ms. Wei's brother. This letter was also provided to Probation prior to their initial pre-sentence report.

The employment Ms. Wei obtained was insufficient to pay for her and her family's financial difficulties so she resorted to other non-conventional means of support.

Ms. Wei was introduced to the business of massage parlors by one of her room mates.  This is when Ms. Wei became a prostitute. Like many Chinese immigrants before her she sold the assets that she was born with as a means of generating additional income. [2] During her time as a prostitute Ms. Wei learned the business

---

[2] As a prostitute, the prosecution would also have to consider Ms. Wei a victim.   See also PSR ¶ 63 where it explains in detail some of the abuses Ms. Wei went through during her tenure as a prostitute.

trade of the "world's oldest profession".

(2)(A) (B) (C). *The need for the sentence "to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant."*

Ms. Hong Wei stands charged and convicted of a serious felony that has already punished her more harshly than any period of incarceration that she faces as set forth above. Ms. Wei had her daughter Clara taken away from her at birth, with no hope of holding Clara for some years to come, and no hope of teaching/supporting Clara as she becomes of age. Ms. Wei's conviction leaves her with only hope that others, including her co-defendant husband, will provide sufficient nurture, education and care for Clara. Ms. Wei's admission of guilt also insures her own deportation; a deportation that may cause a legal battle as to where Clara (a United States citizen by virtue of birth) will reside for years to come.

When Ms. Wei was arrested, Ms. Wei believed that "massage parlors" were a business that generated income. From her perspective, she had been a part of that business and that is where she learned what the massage business expected of the massage girls. In her mind, if women applied for the "massage" position they knew what the position entailed and how the

"massage girls' could increase their own income.  She also believed that the "Aunt" or "Nanny" position were also aware what their job was.  She understands that maintaining houses of prostitution, even under the guise of massage parlors, is not a business legally supported in the United States and she candidly admits to her wrong doing.

Ms. Wei, now **fully** understands the laws of the United States and the punishment they carry.  There is little question that after this experience she will not re-offend. After all, Ms. Wei, as a result of her criminal conduct, has been deprived the joy of nurturing her newborn daughter.  Further, Ms. Wei is a deportable alien who will be deported as a result of this offense even though she has a young soul to care for who may not leave with her upon her deportation.

2 (D) *"to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."*

Ms. Wei will benefit from any educational or vocational training, medical care, or other correctional treatment program offered by the Bureau of Prisons.

While incarcerated, Ms. Wei has done everything possible to care, educate, and assist her fellow inmates.  See letters attached as Exhibit C from detainees at Wyatt Federal Correctional Institution.  Ms. Wei has also participated in

numerous workshop/trainings. PSR ¶ 144.  It is clear that Ms. Wei is doing the best she can within the confines of her current environment.  There is no inference from her behavior that indicates that she would not continue with her current path of seeking knowledge and helping others with her new found knowledge.

    4). *The applicable category of offense under the Advisory Guidelines*.

    The parties and Probation agree that the Advisory Guideline range is seventy months to eighty-seven months based on a Total Offense Guideline Offense Level of 27, Criminal History Category I.

    (6). *The need to avoid unwarranted sentence disparities with similar records who have been found guilty of similar conduct*.

    This Honorable Court, is best able to assess how Courts have treated similar offenders with similar records given the Court's increased discretion after *Booker, Gall and Kimbrough*. Defendants charged in state courts with maintaining houses of prostitution face sentences such as that given to SO (a maximum of six months).  One of the most famous madams, Heidi Fleis, was sentenced to 37 months in Federal prison for cheating on her

///

taxes, laundering call-girl profits and conspiring to hide her crimes.

http://www.nytimes.com/1997/01/08/us/heidi-fleiss-given-37-month-sentence.html

## **Reasons for Variance with the Guidelines based on 18 U.S.C. § 3553(a) factors.**

There are numerous reasons why the Court could impose a sentence in variance with the Guidelines in accordance with all the 3553(a) goals of sentencing. Ms. Hong Wei respectfully asks this Honorable Court to consider the below factors as an individualized basis for an appropriate sentence in this case:

a. Ms. Wei gave birth to her daughter Clara while she was in custody. Ms. Wei has lost the opportunity to mother her newborn, a child who is now soon to be 3 years of age. Given her immigrant status, and this conviction, she is now facing the likelihood of deportation.

b. Ms. Wei was herself an immigrant who learned the business of prostitution in an effort to make money in the United States and thereby help her family in China.

c. Ms. Wei's gambling addiction led her to the need of generating money so that she could gamble the hours away.

d. Ms. Wei, is a deportable alien who is facing not only the likelihood of limited programs within the BOP, but also the probability of civil detention of up to six months pending

deportation.  <u>See e.g.</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678
(2001).

e. The most serious charged offenses, <u>forced labor</u>, occurred
during a very limited time period *some 8 years ago*,
evidencing the complete end to such behavior at that time
even though she continued in the prostitution business.

f.  Ms. Wei's conduct towards other detainees during her
detention demonstrates her desire to make amends for her
wrong doing. <u>See</u>, Ex. D, Ms. Wei's letter to the Court.


## CONCLUSION - SENTENCING RECOMMENDATION

WHEREFORE, HONG WEI, respectfully requests this Honorable
Court to sentence her to **60 months** with five years of supervised
release.   Ms. WEI further requests that the Court find that she
has no ability to pay a fine and asks that this Honorable Court
recommend to the Bureau of Prisons that she be housed close to
New York where her daughter Clara presently resides.


Date: March 14,2013                 Respectfully submitted,

                                    BOURBEAU & BONILLA, LLP

                                    *S/ Victoria M. Bonilla*

                                    VICTORIA M. BONILLA, BBO # 558750
                                    15 Broad Street, Suite 210
                                    Boston, MA 02109
                                    (617) 350 6565

                                    Attorney for Defendant
                                    HONG WEI

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.

*S/ Victoria m. Bonilla*